UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA WALKER[1]
O/B/O ROBERT H. WALKER,

        Plaintiff,                      CIVIL ACTION NO. 08-13578

      v.                                DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of defendant's decision denying reopening or reconsideration[2] of Mr. Robert Walker's application for social security disability benefits for the period 1988 through 1989. He failed to timely appeal this determination, raising it only in his

---

[1] Plaintiff's name in the caption is Jenna Riley Walker. She married the decedent June 20, 1998 (Tr. 829) When she was married to the decedent she was known as Tammie Sue Walker. See, 258 F. Supp 2d 693 (ED MI 2003)(Battani, J.) After his death she remarried. Her current surname is Riley. (Tr. 824, 828, 990) It is not clear when she began to use Jenna or why the last name in the caption is not Riley.

[2] Throughout the record, both the term "reopening" and "good cause [for missing a deadline]" are utilized. The agency has two separate avenues for "reviving" otherwise final determination or decisions. The "reopening" of an application is governed by 20 CFR 404.988, 989 which provides that the agency can reopen within 12 months for any reasons, within 4 years for good cause as defined in 404.989, and at any time for the narrowly defined reasons of 404.988(c). Under 20 CFR 404.911 and SSR 91-5p, the agency will excuse plaintiff's failure to meet a deadline if he can demonstrate good cause for missing the deadline such as by showing a mental limitation which precluded understanding or knowing about the need to file a timely request for review.

second application for benefits filed in 1997, four years after his insured status expired. Plaintiff Mrs.Walker Riley, alleges that Mr. Walker's mental capacity prevented him from requesting reconsideration from 1989 through 1997. This essential issue–whether plaintiff established good cause for the failure to request review of the Cessation Reconsideration Determination–has been reviewed on earlier occasions by other courts. Plaintiff seeks another judicial review here. The government submits that the court lacks jurisdiction to review the denial and that even if jurisdiction exists, substantial evidence supports the determination. For the reasons discussed in this report, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying reopening/reconsideration of the 1988 decision to cessation of benefits be affirmed.

**1. Summary**

Robert Walker, who died of pancreatic cancer in 2002, received Title II disability benefits from 1984 through 1988 based on a claim related to leg and wrist fractures and associated injuries he received in a September, 1984 motorcycle accident. (Tr. 141) These benefits were terminated in 1988 when the Agency determined that his condition had improved. He requested reconsideration which was granted. After reconsideration, the decision terminating benefits was affirmed. Mr. Walker did not appeal further. In December 31, 1993 when he was 44 years old, his insured status expired. In 1997, after meeting his soon-to-be new wife and at her suggestion, he filed a new application for disability benefits. It was denied. He requested further consideration, had a hearing before ALJ Zera, and when that was unsuccessful, he appealed to federal district court. . (Tr. 593-596) The case was assigned to Judge Battani and Magistrate Judge Capel. During the time the case was pending, Mr. Walker contracted

pancreatic cancer and died.³  The parties stipulated to substitute his widow Tammie (aka Jenna) as plaintiff to continue the appeal. (Tr. 597 n.1, 631)   Upon judicial review of the application, the remanded for further proceedings.  On remand, ALJ Johnson determined that Mr. Walker had been disabled effective February 24, 1989 though the date of his death. (Tr. 590, decision of February 26, 2004) The ALJ denied reopening or reconsideration of the decision terminating benefits in 1988.⁴

Plaintiff appealed the decision not to reopen or reconsider the cessation of benefits in 1988 to the Western District of Michigan⁵ and the court remanded the matter to the agency, finding that the ALJ should have more closely considered Mr. Walker's mental state to see if there were any factors bearing on his failure to file an appeal.  After another hearing on remand, in 2007, ALJ King denied reopening.  Plaintiff now appeals to this court on that issue, couching the challenge as one for a constitutional violation.

## II. Procedural Background

### A. 1999 Administrative Hearing

In 1997, after initial denial, Mr. Walker requested a hearing before an ALJ.  The claim for benefits on his second application was reviewed by ALJ Zera in 1999.  Plaintiff was found "not disabled" at any time from 1988 through 1993 when his insured status expired.  ALJ Zera

---

³While the appeal was pending, plaintiff filed a new application for benefits in October, 2001 and was found to be disabled as of September 10, 2001 due to malignant neoplasm of the pancreas.  He collected benefits on that application until his death in March, 2002.

⁴This meant that plaintiff (or his beneficiaries or estate in this case) could only collect benefits for one year prior to the date of the filing of the 1997 application.  Counsel seeks to reopen/reconsider the earlier application as a means to seek benefits going back to 1988.

⁵Apparently, the widow (who had remarried) resided in that district at that time.

found that the doctrine of *res judicata* applied to the time period prior to October, 1988 and dismissed plaintiff's request for a hearing on the termination of benefits. (Tr. 900)  Judge Batanni found that the hypothetical to the vocational expert did not include adequate consideration of plaintiff's mental status.  She remanded the case to the agency for fact finding on that issue. She upheld the ALJ's denial of reconsideration of the earlier termination.[6]

### B. 2004 Administrative Hearing

On remand from Judge Batanni, a posthumous hearing was held before ALJ Johnson in 2004.  Mrs.Walker testified and plaintiff's counsel again requested review of the decision terminating benefits in 1988.  ALJ Johnson applied *res judicata* to that determination and considered the period from February 24, 1989 onward.  ALJ Johnson determined that plaintiff was disabled from that date until his death.   Plaintiff appealed the denial of the "reopening" of the earlier decision terminating benefits to the federal court in the Western District of Michigan (Quist, J/ Breneman, M.J.).    The court, noting that plaintiff had raised SSR 91-5p as an issue concluded that the ALJ should have performed a more substantive discussion of plaintiff's mental capacity to appeal the 1989 determination. The magistrate judge in the Western District noted that it was not appropriate to presume that plaintiff was continuously disabled as he had engaged in substantial gainful activity in 1996 for about 90 days, doing custodial work. (Tr. 906) Plaintiff's counsel argued that the ALJ should have reopened the 1989 decision to terminate

---

[6]It is unclear why plaintiff was allowed to raise the issue of failure to reopen/reconsider before the ALJ or subsequently. ALJ Johnson held the failure to reopen *res judicata*, consistent with Judge Battani's finding.  258 F. Supp 693, 699 (ED MI 2003).  Judge Battani found that the ALJ should have referenced plaintiff's mental condition in her hypothetical and failure to do so was not harmless error. In her opinion, remand was limited to "further fact finding on this issue." 258 F. Supp at 701.  Under the law of the case doctrine, further consideration of the earlier application may be precluded but this issue has not been raised by the parties.

benefits on the ground that the claimant was mentally incapable of contesting that decision. (Tr. 906) The magistrate judge stated that plaintiff's counsel had submitted a "pre-hearing memorandum for closed period" which requested reopening on the grounds that claimant was despondent from his wife's suicide prior to filing the 1997 application for benefits. The magistrate judge stated that plaintiff (Mrs. Walker) testified that claimant's first wife committed suicide in July 1988 and claimant was terminated from his employment in October, 1988. (Tr. 830, 908) It should be noted that this is clearly in error. Plaintiff was not working in October, 1988 as he was receiving disability benefits; the termination refers to benefits, not employment. In addition, all of the evidence of emotional difficulty testified to by Mrs. Walker is hearsay as she did not really know claimant until 1996. Nevertheless, the court found that ALJ did not adequately explain his reasoning on failure to reopen and ordered a remand for the purpose of determining whether plaintiff was capable of filing an appeal of the February 24, 1989 termination decision. *Jenna Riley o/b/o Robert Walker v. Commr of Soc. Sec*. Case No. 1:05-CV-801 #12 (WD Mi 2007)(Tr. 913)

### C. 2007 Administrative Hearing

On remand from the Western District, another posthumous hearing was held before ALJ King who considered evidence with respect to whether good cause had been established for Mr. Walker's failure to request review of the Cessation Reconsideration Determination under SSR 91-5. (Tr. 990). On September 28, 2007, the ALJ analyzed the evidence and applied the criteria set forth in the regulations and rulings. See 20 CFR 404.911 and SSR 91-5. The ALJ found that during the period February 23, 1989 through August 11, 1997, plaintiff had the ability to read, write, and understand English. He effectively functioned at or above a level equivalent to one

with a high school education. The effects of his physical and mental impairments did not significantly inhibit his mental capacity to understand the procedures for requesting review. (Tr. 866-68, 877) Indeed, he requested and received reconsideration in 1988 on the cessation termination. There was not evidence to show that he was mentally impaired from proceeding further on that application, or was mentally unable to request reconsideration or reopening within relevant time periods. Plaintiff's counsel appealed this determination to the Appeals Council which upheld the ALJ's decision. The Appeals Council noted that Mr. Walker did not show mental incapacity between February 1989 and August 1997; there were no medical records documenting treatment or making findings with respect to mental incapacity; plaintiff did not lack the mental capacity to request timely review of the reconsideration determination; and the criteria in SSR 91-5 were not met. (Tr. 852) Plaintiff now appeals this determination and asks for a remand under sentence four to evaluate the evidence under SSR 91-5.

## III. Standard of Review

### A. Disability Claims

On judicial review, the Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir.1994) ("We will affirm the Secretary's decision to deny benefits as long as the Secretary applied correct legal standards in reaching the decision, and as long as the Secretary's findings of fact are supported by substantial evidence."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)

This means that administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts. If the administrative decision is supported by substantial evidence, a reviewing court must affirm. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir.1994) (citations omitted).   But a decision of the Commissioner will not be upheld where the agency fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir.2007).

### B.  Review of Decision Not to Reopen

Plaintiff challenges the agency's denial of his request to reopen the decision to terminate his benefits. Generally, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits. *See Califano v. Sanders,* 430 U.S. 99, 107-09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The only exception to this rule is "where the Secretary's denial of a petition to reopen is challenged on constitutional grounds." *Id.* at 109, 97 S.Ct. 980.  The reasoning is that constitutional questions are unsuitable for resolution in administrative proceedings.  *Sanders*, 430 U.S. at 109.  The agency's decision that a claimant is not entitled to additional time to seek review is not subject to judicial review, absent a colorable constitutional claim.  *Hilmes v. Secretary of HHS*, 983 F.2d 67, 70 (6th Cir. 1993).

In *Wills v. Secretary of HHS*, 802 F.2d 870 (6th Cir. 1986), a claimant's allegation of impaired mental capacity was sufficient to establish a colorable constitutional violation of denial of due process so as to confer jurisdiction on the court to review an otherwise unreviewable denial of reopening. 802 F2d at 873. Unlike plaintiff, Wills had an I.Q. of 81, was able to read at only a fourth grade level, and was diagnosed with chronic aggressive character disorder and significant depression and acute anxiety secondary to concern about possible loss of brain function. *Id* at 872. At that time, mental impairment was not "good cause" to reopen. *Id* at 873.

Subsequently, the agency clarified and strengthened the regulatory process for extending the appeal deadlines. Routine factual determinations of a claimant's mental capacity to understand the procedures for requesting review are now well within the agency's responsibility and expertise. Social Security Ruling 91-5p provides that when a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination, decision, dismissal, or review by a federal district court, and the claimant had no one legally responsible for prosecuting the claim (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action. However, for purpose of establishing good cause, the claimant must establish his mental incapacity by evidence which shows that he lacked the mental capacity to understand the procedures for requesting review.

In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action: (1) inability to read or write; (2) lack of facility with the English language; (3) limited education; (4) any mental or physical condition which limits the claimant's ability to do things for him/herself. The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case.

It should be noted that incapacity does not excuse failure to file. Courts must follow the plain mandate of Congress when, as here, it is acting within its powers to prescribe conditions and limitations as a means of preserving the fiscal integrity of the Social Security fund. *Johnson v. United States,* 572 F.2d 697,699 (9th Cir.1978). Furthermore, the administration is "not duty bound to review" prior claims and inform claimants of their rights under subsequent developments in the law. *Id.* "Ignorance of applicable eligibility and procedural requirements" does not amount to a due process violation. *Boyd v. Bowen,* 797 F.2d 624, 628 (8th Cir.1986) (affirming the denial of an untimely application for surviving child's benefits).

**C. Standing**

Here, it must be noted that there is also the question of standing. It is Mrs. Walker Riley who seeks to enforce the due process rights of her deceased husband, rights that would have been violated, if they were violated at all, at a time substantially before she appeared on the scene. In a creative, but very thin, argument, she contends that the denial of her motion to reopen the decision on termination of benefits for Mr. Walker deprived him of due process because at the time his benefits were terminated in 1988, his mental disabilities prevented him from understanding and pursuing his administrative remedies. The Supreme Court applies a

presumption against third-party standing as a prudential limitation on the exercise of federal jurisdiction, see, *e.g., Singleton v. Wulff,* 428 U.S. 106, 113. *Miller v. Albright* 523 U.S. 420, 422, (O'Connor with Kennedy concurring). Normally, a litigant only has standing to vindicate his own constitutional rights. *Norfolk 302, LLC v. Vassar*, 524 F.Supp.2d 728 (E.D.Va.,2007). The standing inquiry is particularly rigorous when a court is considering the asserted unconstitutionality of actions taken by another branch of the government. *Flynt v. LFP, Inc*., 245 F.Supp.2d 94 (D.D.C.,2003)  It is one thing to substitute Mrs. Walker Riley as plaintiff by stipulation to pursue the appeal; it is quite another for such agreement to confer on her standing to enforce the constitutional rights of the decedent.

## IV. Analysis

Plaintiff was born June 6, 1949. He died in March, 2002 from pancreatic cancer. As found by the district court on plaintiff's first appeal to federal court, Mr. Walker was forty-four years old at the time his insured status expired December 31, 1993. He had an eleventh grade education, but with additional training as an electrician (Tr. 561-2), and past relevant work experience as an electrician and building mechanic. *Tammie Walker ob/o Robert Walker* 258 F. Supp 2d 693 (ED Mi 2003) (Batanni, J.)  In September, 1984, Mr. Walker was injured in a motorcycle accident. He filed for disability insurance benefits in March, 1985 alleging disability based on after effects of fractures from that accident  He was granted and received benefits. Medical records indicate that he sustained leg and wrist fractures, some of which were open fractures. Several surgeries were involved to repair the fractures and recovery took several months. (Tr. 141-145, 158)  In 1987, it was reported that his femur was doing "unbelievably well." (Tr. 181, 185)  In 1988, Dr. Strum, Mr. Walker's treating physician, opined that plaintiff

is totally and permanently disabled as a result of leg weakness and problems balancing.  (Tr. 261)

### A.  Mental Health Considerations

At the time that his benefits were terminated, Mr. Walker was separated from his then-wife Carol.  She committed suicide in July, 1988.  Shortly thereafter, Mr. Walker was advised that his Social Security disability benefits were going to cease.  In November, 1988, he requested reconsideration of this determination but after an adverse decision in February, 1989, he did not appeal further (Tr. 18, 584, 864).  Mr. Walker had no psychiatric hospitalizations and attended only about three group therapy sessions between 1988 and 1990.  He had no other mental health treatment during that period.

In 1990, in response to complaints of headaches, he was given an MRI of the brain.  It was normal except for a finding of sinusitis. (Tr. 213,260)  He was treated for migraine and other headaches in 1993.  The notes of Dr. Ballesteros, M.D., his neurologist, indicate that he was in no distress on examination in January, 1993, his memory was normal, and he was taking Elavil for his headaches. (Tr 177) Although he treated with various orthopedists throughout this period (Tr. 178, 179), he saw no mental health professionals.  Mr. Walker had no further mental health treatment until 1996 (Tr. 539-551).

Mr. Walker sought treatment for depression in 1996. (Tr. 218)  The treatment consisted of a few individual counseling sessions with a Ms. Cally, a volunteer at "Elly's Place" a group therapy program for parents of grieving children. No substantial discussion of that treatment is

contained in the record of the 1999 hearing. In 2007, Ms. Cally provided a statement about her treatment of Mr. Walker. (Tr. 984-5)

In August, 1997, Mr. Walker reported to Dr. Strum that he was getting married in November, 1997. (Tr. 230) Mr. Walker was doing well on Prozac but had some impotency and so was switched to Paxil. (Tr. 231) Past medical history was noted to include depression. (Tr. 232) Office notes from Dr. Strum show that Mr. Walker was doing well, needed to lose weight, quit smoking, and exercise. (Tr. 237-257)

Mr. Walker and Tammy Sue saw Dr. Strum, his treating physician, in 1998. At that time, Dr. Strum reported that Mr. Walker was totally disabled due to his physical impairments. In Dr. Strum's opinion, Mr. Walker was totally disabled due to post-traumatic arthritis and his hands become stiff and sore after doing any work. (Tr. 228) With respect to mental health issues, Dr. Strum stated that Mr. Walker had some stress because of not receiving Social Security disability. Dr. Strum reported that Mr. Walker's spirits seemed good and that he was on Prozac. (Tr. 229)

**B.  Mr. Walker's Testimony before the ALJ**

In 1997, eight years after his benefits terminated and four years after his insured status expired, Mr. Walker filed his second application for benefits alleging disability as of December 1, 1988 due to the after-effects of the motorcycle accident and depression and requesting to reopen the earlier decision to terminate benefits. This is the only hearing conducted while Mr. Walker was alive. At the hearing before ALJ Zera, Mr. Walker testified regarding his mental status. He stated that in 1988 he went to group therapy at the recommendation of his treating physician to deal with tragic deaths in families with children. His brother and mother had also committed suicide many years before. He attended a few sessions between 1988 and 1990. (Tr.

538, 531) He was never hospitalized for mental health issues, had no individual counseling, saw no psychiatrist, and had no further treatment until 1996. At that time, he attended some individual sessions with a Ms. Cally, a social worker. (Tr. 539, 551) Mr. Walker stated that he had experienced depression since his childhood, which was exacerbated by his brother's suicide (Mr. Walker was age 11 at that time) and his mother's suicide when he was a teenager, and the suicide of his first wife in 1988. His daughter Kimberly Wood testified that her father was short-tempered, cried frequently, and did not like to go anywhere. (Tr. 546-547)

Medical records and ALJ findings show that in 1988, Mr. Walker sought treatment from the Genessee Psychiatric Center ("GPC") after his first wife committed suicide. He was diagnosed with major depressive disorder, but was not prescribed any medication. He went to GPC on four other occasions through February, 1990, but did not seek psychological treatment again until 1996, over two years after the expiration of his insured status. At that time, Plaintiff was diagnosed with major depression. At the 1999 hearing, Dr. Jeffrey Ander, a clinical psychologist, testified as a medical expert. He stated that based on the evidence in the record, Mr. Walker experienced an adjustment disorder with depressed mood from August 1988 through February, 1990. (Tr. 555-556) The mental impairment resulted in a slight to moderate restriction of his social functioning, slight restriction of his daily activities, and had a varying impact–between seldom and often–on his ability to complete tasks in a timely manner, to concentrate, and to maintain persistence and pace. (Tr. 558-559) Judge Battani has already held that the record reflects that Plaintiff was examined by his treating physician, Dr. Sturm in February, 1991. Based upon that exam, Dr. Sturm indicated that aside from chronic headaches, which Plaintiff had for years, Plaintiff was doing quite well. Further, Judge Battani recognized

13

the testimony of the medical advisor regarding plaintiff's mental condition. At the administrative hearing, the medical advisor testified that Plaintiff had an episode of adjustment disorder with depressed mood from August, 1988 to February, 1990 and further testified that Dr. Sturm's medical reports from 1991 and 1992, which indicated that Plaintiff was in "good spirits," were inconsistent with a continued depressive disorder beyond 1990.

### C. Posthumous Development of Evidence

On March 31, 2003, Judge Battani remanded the matter to the Agency, finding that the ALJ did not properly describe Mr. Walker's mental state in the hypothetical. (Tr. 682-689) The court also determined that *res judicata* barred review of the determination on the prior claim. (Tr. 623, 686; *Walker v. Barnhart*, 258 F. Supp 2d 693, 699) The court stated:

> The Court adopts the magistrate's extensive and thorough analysis of this issue, and finds that the ALJ did not reopen Plaintiff's 1985 application for DIB simply by discussing and considering medical evidence from that claim. In so holding, the Court reiterates the magistrate's conclusion that at no time did the ALJ reconsider the merits of Plaintiff's earlier claim by seeking to determine whether Plaintiff was actually disabled during the relevant time period for that claim. Rather, the ALJ specifically noted that *res judicata* barred her from reviewing Plaintiff's 1985 claim. Therefore, she considered only Plaintiff's disability status as to the unadjudicated time between December 1, 1988 and December 31, 1993, when Plaintiff's disability insurance expired.

On remand before ALJ, Mrs. Walker Riley renewed the request to reopen the Agency's 1988 determination terminating Mr. Walker's benefits arguing that Mr. Walker was despondent from his [first] wife's suicide and the subsequent grief counseling during this period. (Tr. 657) ALJ Johnson noted that the request was not filed within the required time period of 20 CFR 404.988. In addition, good cause did not exist for reopening under 20 CFR 404.989. No new and material evidence had been submitted. The ALJ found no reason not to apply the doctrine of *res judicata* to the prior decision, 20 CFR 404.957(c). Plaintiff had not established good cause

14

to reopen and the determination was held to be *res judicata*. (Tr. 585)  The ALJ then considered the period February 24, 1989 (the day after the determination denying benefits) though Mr. Walker's death and determined that he was disabled from 1989 through his death. (Tr. 590) Plaintiff appealed the denial of the reopening; the Appeals Council upheld the decision.  Plaintiff then appealed to federal court in the Western District of Michigan. No. 1:05-CV-801 (WD MI 2007) (Tr. 879-81).  The magistrate judge there found that ALJ Johnson implicitly found that plaintiff was capable of filing an appeal on February 24, 1989 but did not discuss the physical and mental impairments contemporaneous to the Cessation Reconsideration Determination (Tr. 913).  The magistrate judge noted that plaintiff had raised Social Security Ruling 91-5p as an issue and concluded that the ALJ should have performed a more substantive discussion of Mr. Walker's mental capacity to appeal the 1989 determination. The district court remanded the case under Sentence Four of section 405(g) to address the constitutional claim under SSR 91-5.  (Tr. 914-15)

## V.  Evaluation under SSR 91-5p Is Supported by Substantial Evidence

ALJ King carefully considered all the factors under 91-5p.  First, Mr. Walker was never found to be legally incapacitated in any sense.  In addition, he was able to understand the procedures in 1988 shortly after his wife died sufficiently to request reconsideration.  Dr. Ander's testimony in 1999 regarding adjustment disorder, guilt over wife's suicide, and concern for his daughters contradicts plaintiff's claim here.  Mr. Walker was never hospitalized for any psychiatric condition, and when seen for his few therapy sessions in 1988 and 1990, notes indicted that he was alert and fully oriented, intact memory, average intelligence, no evidence of a thought disorder, and displayed insight and judgment that improved from poor to fair. (Tr. 422,

15

426-28) His treating physician Dr. Strum describes him as in good spirits. His brain study was negative for any organic or other impairment. The ALJ's finding that Mr. Walker had the capacity to file a timely appeal is supported by substantial evidence.

## VI. Constitutionality of Determination not to Reopen

Assuming that Mrs. Walker has standing to argue violation of Mr. Walker's right to due process, she still does not prevail.[7] There was nothing "arbitrary" or "fundamentally unfair" about the decision not to reopen. The Sixth Circuit in *Yeiter v. Secretary of Health & Human Servs.,* 818 F.2d 8 (6th Cir.), *cert. denied,* 484 U.S. 854 (1987) dealt with a situationwhere the claimant was mentally and functionally incapacitated from injuries she sustained in an automobile accident, and her husband, appointed her guardian, did not file an application for disability insurance benefits on her behalf until ten years later, 1983. He argued that the twelve-month limit on retroactive benefits violated due process and equal protection, but the court found "nothing fundamentally unfair in conditioning benefits upon the filing of an application." 818 F.2d at 10. Here, no application was filed until 1997 and it was ultimately granted. There is no showing that mentally Mr. Walker was any different in 1997 than he was in 1988 from the standpoint of knowing his ability to appeal. See also, *Mitchell v. Harris,* 496 F.Supp. 230 (D.N.J.1980)(statutory limit was not patently arbitrary and served as a rational means to preserve the fiscal integrity of the social security fund).

---

[7]Had this issue been raised by the government, this court would hold that plaintiff lacks standing to bring due process challenges on behalf of her deceased spouse.

## VII.  Conclusion

Accordingly, it is recommended that the defendant's motion be granted, that of the plaintiff denied, and decision denying reopening of the 1988 decision to terminate benefits be denied.

                                    S/Virginia M. Morgan  
                                    Virginia M. Morgan  
                                    United States Magistrate Judge

Dated: September 17, 2009

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on September 17, 2009.

                                      s/Jane Johnson  
                                      Case Manager to  
                                      Magistrate Judge Virginia M. Morgan